UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAHIM CALDWELL,

        Plaintiff,

v.

AMAZON.COM SERVICES LLC, *et al.*,

        Defendants.

No. 1:22-cv-7251

**OPINION**

**APPEARANCES**:

Rahim Caldwell
PO Box 29660
Providence, RI 02909

    *Pro Se*.

Jason Joseph Ranjo
Richard G. Rosenblatt
Carlyle Wayne Edwards-Balfour
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on Motions for Summary Judgment[1] ("Motions"), by Defendants Amazon.com Services LLC[2] ("Amazon"), Rebecca Preston[3] ("Preston"), and Cori Konopka ("Konopka") (collectively, "Defendants"), (ECF Nos. 60, 74), and Defendants' Motion to Seal Portions of the Filings Related to the Motion for Summary Judgment ("Motion to Seal"), (ECF No. 80). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motions are **GRANTED**, and Defendants' Motion to Seal is **DENIED**.

## I.     BACKGROUND[4]

Plaintiff Rahim Caldwell ("Caldwell") is a former Amazon Fulfillment Center Associate. (Defs. SOMF, ECF No. 62 at ¶ 1). Caldwell was initially terminated on September 7, 2022 due to a computer system error which recorded his use of paid time off ("PTO") to cover extra breaks as unexcused attendance violations. (*Id.* at ¶¶ 2–3). Upon discovery of the error, Preston, in her capacity as a Human Resources ("HR") Business Partner, assisted in reinstating Caldwell effective October 2, 2022. (*Id.* at ¶ 4). Amazon agreed to pay Caldwell for the wages he lost during the

---

[1] All citations to Defendants' substantive arguments refer to the Motion for Summary Judgment filed by Defendants Amazon and Preston ("Motion"). (ECF No. 61).

[2] This defendant is incorrectly identified in Plaintiff's Complaint as "Amazon" and "ACY1 Amazon Fulfillment Center." (Compl., ECF No. 1-1 at 2; Notice of Removal, ECF No. 1 at 1). "ACY1 Amazon Fulfillment Center" is not a separate legal entity and is merely the location where Caldwell was stationed. (Motion, ECF No. 61 at 10 n.3).

[3] This defendant was initially identified as "Rebecca Doe." (Compl., ECF No. 1-1 at 2). Caldwell later identified her as Rebecca Preston. (ECF No. 56 at 1). However, as of this date, Caldwell has not formally amended his Complaint to substitute Preston for Defendant Doe.

[4] Caldwell failed to submit a response to Defendants' Statement of Material Facts, and thus they are deemed undisputed for purposes of the Motions pursuant to Local Rule 56.1.

three-week period he was erroneously terminated and not scheduled to work ("lost wages"). (*Id.* at ¶ 5).

On October 19, 2022, Caldwell went to AmCare, Amazon's onsite occupational health and safety office, approached Morgan Douglas ("Douglas"), an Onsite Medical Representative ("OMR"), and complained that to date he had not yet received payment for his lost wages. (*Id.* at ¶¶ 6, 10, 13). He then stated that "[t]hey're treating me like a [n*****] and a slave." (*Id.* at ¶¶ 14, 16). Douglas informed Caldwell that she was unable to assist him but would request an HR representative come to AmCare and speak with him. (*Id.* at ¶¶ 15, 17). Caldwell insisted on speaking with Preston, but she was out of the office. (*Id.* at ¶¶ 18–19). Douglas then contacted Robin Lucci ("Lucci"), HR Business Partner, to assist Caldwell, but he refused to speak with her after she arrived at AmCare. (*Id.* at ¶¶ 19–20).

As a result, Lucci contacted Amazon's Loss Prevention department ("LPD") to investigate Caldwell's "intimidating behavior and derogatory language." (*Id.* at ¶ 21). While waiting for LPD to arrive, Caldwell continued to engage in disruptive and harassing behavior. He refused to sit down after being requested to do so, told Douglas that her attitude towards him was disrespectful, taunted her, and stared at her for an extended period of time. (*Id.* at ¶¶ 23–24, 45–46). Shortly thereafter, Konopka, an LPD Specialist, arrived and attempted to interview Caldwell regarding Douglas's concerns about his behavior, but he refused to answer her questions. (*Id.* at ¶¶ 25, 27). Vincent Sampoli ("Sampoli"), an LPD Manager, then arrived to assist, but Caldwell again refused to answer any questions. (*Id.* at ¶¶ 28, 30). Konopka then contacted the West Deptford Police Department, and Caldwell eventually left the building. (*Id.* at ¶¶ 31–32). Later that day, Amazon paid Caldwell the lost wages. (*Id.* at ¶¶ 9, 34).

Following the October 19, 2022 incident, Sampoli conducted an investigation, collected witness statements, and prepared a report. (*Id.* at ¶ 50). Sampoli concluded that Caldwell "failed to comply with the investigation process and would not answer questions being asked" by HR or LPD. (*Id.* at ¶ 52). Failure to participate in an investigation is a Category 1 violation under Amazon's Standards of Conduct, which is a terminable offense.[5] (*Id.* at ¶ 39). After reviewing Sampoli's report, Henry Vaca ("Vaca"), Amazon Senior HR Manager, terminated Caldwell on October 28, 2022 for failing to cooperate in the LPD investigation. (*Id.* at ¶¶ 53, 55). Vaca also concluded that Caldwell "committed a Category 2 offense by using '[a]busive, vulgar, or harassing language' in the workplace." (*Id.* at ¶¶ 41, 56).

## II.     PROCEDURAL HISTORY

On October 31, 2022, Caldwell commenced this action *pro se* in the Superior Court of New Jersey, Gloucester County, asserting claims of unpaid wages and retaliatory discharge. (Notice of Removal, ECF No. 1 at ¶ 2; Compl., ECF No. 1-1 at 2). The sole claim asserted is a cause of action under the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.* On December 13, 2022, Amazon removed the matter to this Court.[6] (ECF No. 1).

Defendants Amazon and Preston filed a motion for summary judgment on March 8, 2024, which Konopka joined on May 13, 2024. (ECF Nos. 60, 74). Caldwell filed his response on May

---

[5] Amazon's Standards of Conduct includes "a list of examples of infractions that may result in corrective action" including termination. (Defs. SOMF, ECF No. 62 at ¶ 36). Infractions are organized into two levels: Category 1 and Category 2. (*Id.* at ¶ 37). Category 1 infractions are deemed "extremely serious," while Category 2 violations "are considered serious." (*Id.* at ¶¶ 38, 40). The former may result in termination following a single offense, while the latter generally results in corrective action. (*Id.*). Caldwell received and acknowledged Amazon's Standards of Conduct in October 2020. (*Id.* at ¶ 42).

[6] At the time the Notice of Removal was filed, Defendants Preston and Konopka had not yet been served.

29, 2024, (ECF No. 75), to which Defendants replied on June 11, 2024, (ECF No. 77). Caldwell filed a sur-reply on June 14, 2024.[7] (ECF No. 79).

On June 25, 2024, Defendants filed the Motion to Seal, which is unopposed. (ECF No. 80).

### III.     JURISDICTION

This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a)(1) and 1441(a) as there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.[8]

On December 29, 2022, Caldwell filed a Motion for Remand arguing that Defendants failed to demonstrate that the amount in controversy exceeded $75,000. (ECF No. 6 at 3–4, 6). Defendants opposed remand arguing that because Caldwell failed to definitively state in the complaint that the amount in controversy was less than the jurisdictional minimum, the case could only "be remanded if it appears to a legal certainty that [he could not] recover the jurisdictional amount." (ECF No. 13 at 5 (citing *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007))). In the alternative, Defendants argued that if the Court granted remand "it should require Caldwell to acknowledge that he shall be judicially estopped from seeking or accepting more than $75,000 in total damages." (*Id.* at 9). Caldwell filed a reply reiterating his prior arguments. (ECF No. 15). On February 3, 2023, the Court denied Caldwell's Motion for Remand but stated if he "wishe[d] to enter into a stipulation with Defendants agreeing that he will not seek to recover more than $75,000.00 he can do so and thereafter seek remand." (ECF No. 16 at 2–3).

---

[7] Caldwell did not seek leave of the Court prior to filing the sur-reply in accordance with Local Rule 7.1. Nevertheless, the Court will consider the sur-reply considering his *pro se* status.

[8] Caldwell is a citizen of Rhode Island. (Compl., ECF No. 1-1 at 2). Amazon is a limited liability company whose sole member is incorporated in Delaware, and whose principal place of business is in Washington. (Notice of Removal, ECF No. 1 at ¶ 15). Defendants Konopka and Preston are citizens of New Jersey. (*Id.* at ¶ 16; Preston Decl., ECF No. 82 at ¶ 3).

5

On February 5, 2023, Caldwell filed a Motion for Reconsideration arguing he met his burden to show "the maximum amount in controversy to a legal certainty" and only "valued his case at $40,500." (ECF No. 17 at 1–2). On February 16, 2023, the Court denied Caldwell's Motion for Reconsideration and again entered an Order stating that unless Caldwell agreed that the "maximum amount of his case is not in excess of $75,000 by stipulating to [the] same" the Court was unable to find with "legal certainty that the maximum amount" fell below the jurisdictional threshold. (ECF No. 22 at 2). Caldwell never did so.

### IV. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the

pleadings and by h[is] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotations and citation omitted). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

## V. DISCUSSION

### A. Defendants' Motions for Summary Judgment (ECF Nos. 60, 74)

Caldwell alleges that Amazon terminated him because he complained that Amazon's failure to pay him his lost wages made him feel as if he was being treated like a "[n*****] and a slave". (Defs. SOMF, ECF No. 62 at ¶¶ 14, 16). Defendants argue summary judgment is appropriate because Caldwell fails to establish a prima facie case under CEPA and, even if he did, he fails to rebut Amazon's proffered, non-retaliatory reason for his termination. The Court agrees.

CEPA "protects an employee from employer retaliation in cases where the employee 'blows the whistle' on illegal or unethical activity." *Reynolds v. TCM Sweeping, Inc.*, 340 F. Supp. 2d 541, 545 (D.N.J. 2004). To establish a prima facie CEPA case, a plaintiff must show that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in [N.J. Stat. Ann. §] 34:19-3(a); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Lippman v. Ethicon, Inc.*, 119 A.3d 215, 226 (N.J. 2015). The burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) applies to claims under CEPA. *Walsh v. Bril-Jil Enters. Inc.*, No. 15-0872, 2016 WL 6246764, at *11 (D.N.J. Oct. 24, 2016). Thus, once a plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. Thereafter, the burden shifts back to the plaintiff, who, in order to survive summary judgment, must point to evidence from which a jury could find that the employer's articulated reason for the adverse action is pretext for retaliation and the real reason was plaintiff's whistle-blowing activity. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

Here, Defendants argue that (1) Caldwell cannot establish a prima facie case under CEPA; and (2) even if he can, Defendants have articulated a legitimate non-retaliatory reason for his termination which he has failed to rebut or point to evidence from which a jury could find pretext. (Motion, ECF No. 61 at 10–17).

    1. <u>Reasonable Belief There was a Violation of Law, Rule, Regulation, or Clear Mandate of Public Policy</u>

As to the first prong, Defendants contend Caldwell fails to identify a law, rule, regulation, or public policy he believed Defendants violated. (Motion, ECF No. 61 at 12; Reply, ECF No. 78 at 5, 7, 9). Moreover, Defendants argue that to the extent Caldwell contends that Amazon's delay to pay him lost wages violated New Jersey wage and labor laws, this argument fails as there is no legal obligation to pay an employee for time "spent *not* working." (Motion, ECF No. 61 at 12) (emphasis in original). Caldwell responds generally asserting that Defendants' failure to timely pay his lost wages was a violation of law. (Opp., ECF No. 75 at 2, 13).

While a plaintiff is not required to "'set forth facts that, if true, would constitute a violation of [a statute],' . . . he must establish a 'substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff[.]'" *Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 477 F. App'x 890, 899 (3d Cir. 2012) (quoting *Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003)). Further, the court "must be alert to the sufficiency of the factual evidence and to whether the acts complained of could support the finding that the complaining employee's belief was a reasonable one, and must take care to ensure that the activity complained about meets this threshold." *Chiofalo v. State*, 213 A.3d 900, 910 (N.J. 2019) (quotations omitted) (quoting *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 626 (N.J. 2013)). "[I]f the required substantial nexus is not shown, the case should not proceed to a jury." *Id.* at 909.

While Caldwell has not specifically identified a law, rule, regulation, or public policy he believed Defendants violated, the Court can do so based on the facts. *Bocobo*, 477 F. App'x at 899. The New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*, governs the time and mode of payment of wages due to employees." *Hargrove v. Sleepy's LLC*, 106 A.3d 449, 457 (N.J. 2015). The statute provides for a private cause of action. N.J. Stat. Ann. § 34:11-4.7.

Caldwell alleges that Amazon failed to pay his lost wages for the time period he was wrongfully terminated due to a computer error. (Opp., ECF No. 75 at 16; Defs. SOMF, ECF No. 62 at ¶ 3). He alleges that on October 19, he went to AmCare with the intention of blowing the whistle about "not being paid for labor [he] performed" and for his wrongful termination on September 2, 2022. (Opp., ECF No. 75 at 16). Thus, Caldwell's complaints related to Amazon's failure to pay him his lost wages, have a substantial nexus to the NJWPL. Caldwell's belief that Amazon violated a law (i.e., NJWPL) by failing to pay him lost wages immediately upon his

9

reinstatement was reasonable given the undisputed facts that he was terminated in error and Amazon agree to pay him for his lost wages. (Defs. SOMF, ECF No. 62 at ¶¶ 3, 5).[9]

Defendants' argument that Caldwell's complaint did not have a substantial nexus to the NJWPL because there is no legal obligation to pay an employee for time spent not working misses the point. While Defendant may be correct that Amazon did not actually violate the NJWPL, under the first prong, a plaintiff is only required to demonstrate a reasonable belief that their employer violated a law. *Dzwonar*, 828 A.2d at 901. They are not required to demonstrate an actual violation of law. *Id.* (plaintiff is not required to show that a "law, rule, regulation, or clear mandate of public policy would be violated if all the facts he or she alleges [were found to be] true"). Here, Caldwell satisfies the first prong of a CEPA claim.

### 2. Whistle-Blowing Activity

As to the second prong, Defendants argue that Caldwell's claim fails because he did not engage in protected activity since he did not raise his concerns with a supervisor. (Motion, ECF No. 61 at 13–14).

A plaintiff must establish that "he or she performed a 'whistle-blowing' activity described

---

[9] Caldwell also argues that his complaints that the failure to pay his wages was discriminatory against him because of his race was protected activity under CEPA. (Opp., ECF No. 75 at 2). He does not identify a law, rule, regulation, or public policy that he reasonably believed Defendants violated in this regard. (*See generally* ECF Nos. 75, 79). Caldwell's complaints in this regard may have a substantial nexus to the New Jersey Law Against Discrimination ("NJLAD") which prohibits discrimination based upon race in employment. N.J. Stat. Ann. § 10:5-12(a). But Caldwell merely alleges that he felt as if he was being treated "like a [n*****] and a slave" because of the failure to pay his lost wages and wrongful termination. He fails to proffer any facts to support a finding that his belief that he was subject to race discrimination was reasonable. Further, Caldwell cannot assert a race discrimination claim under CEPA as the statute does not independently prohibit race discrimination, *Brown v. City of Long Beach*, 380 F. App'x 235, 238 n.3 (3d Cir. 2010), and he brings no independent NJLAD claim. (Pl. Mot. for Reconsideration, ECF No. 17 at 1).

in [N.J. Stat. Ann. §] 34:19-3(c)." *Lippman*, 119 A.3d at 226. A whistle-blowing activity is a notification, or threat of notification, to an outside agency or a supervisor. *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1181 (N.J. 2008).

Here, Caldwell alleges that on October 19, he entered AmCare with the intention of blowing the whistle about "not being paid for labor [he] performed" and for his improper termination. (Opp., ECF No. 75 at 16). Indeed, Caldwell admitted that he avoided going to the HR office because he did not want to speak with Lucci, the HR Business Partner, and he went to the first office he could locate. (Defs. SOMF, ECF No. 62 at ¶ 12). Further, he also admitted that he knew Douglas was neither a manager nor a member of the HR department but rather a licensed medical professional. (*Id.*). Most importantly, even when presented with the opportunity to raise his concerns with an HR representative, Caldwell refused to speak to HR. (Defs. SOMF, ECF No. 62 at ¶¶ 13, 15, 19–20). Thus, Caldwell never notified a supervisor of his concerns and fails to satisfy the second prong of the CEPA claim. *Sepulveda v. Twp. of N. Bergen*, No. 795-20, 2022 WL 761182, at *7–*8 (N.J. Super. Ct. App. Div. Mar. 14, 2022) (finding plaintiff failed to satisfy the second prong as she failed to report the alleged violation to a supervisor); *Watkins v. State of N. J., Off. of Att'y Gen.*, No. 3387-99, 2005 WL 3711182, at *4 (N.J. Super. Ct. App. Div. Jan. 30, 2006) (finding plaintiff was not a whistleblower because he failed to disclose his concerns to a supervisor).

### 3. Adverse Employment Action

The third prong requires Caldwell to demonstrate that he suffered an adverse employment action. *Lippman*, 119 A.3d at 226. Defendants concede Caldwell suffered an adverse employment action as he was terminated. (Motion, ECF No. 61 at 8).

4. <u>Causation</u>

As to causation, Defendants contend even if Caldwell can meet the first three prongs, he fails to show a causal connection between his complaint and his termination. (Motion, ECF No. 61 at 15–16).

To satisfy the fourth prong, a plaintiff must provide some evidence of a causal connection between the retaliatory action and the alleged "whistle-blowing" activity. *Kolb v. Burns,* 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999). A plaintiff may show causation by circumstantial evidence that justifies an inference of retaliation or direct evidence of retaliation. *Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005). Temporal proximity may be used to show causation in certain circumstances but alone it is generally not enough to establish causation unless it is unusually suggestive of retaliation. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). "[T]here is no bright line rule as to what constitutes unduly suggestive temporal proximity." *LeBoon*, 503 F.3d at 232. However, courts in this Circuit have found that adverse action taken less than two weeks after the protected conduct may be "unusually suggestive" and thus sufficient to support an inference of retaliation. *Yu v. U.S. Dep't of Veteran Affs.,* 528 F. App'x 181, 185 (3d Cir. 2013) (finding the temporal proximity is "unusually suggestive" when the termination occurs "within a few days but no longer than a month" of protected activity); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 285 (3d Cir. 2000) (finding a period of three to four weeks between protected activity and termination was "suggestive" of retaliation); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding a period of two days between protected activity and adverse action suggestive of retaliation). However, "the mere fact that [an] adverse employment action occurs after [the

protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

Here, Caldwell must produce evidence which would permit a reasonable jury to find that it is "more likely than not" that his complaints of not receiving his wages was a "determinative or substantial motivating factor" in Amazon's decision to terminate his employment. *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 272 (N.J. Super. Ct. App. Div. 2001). The temporal proximity of his termination (i.e., less than two weeks after he made complaints regarding Amazon's failure to pay his lost wages) alone might be "unusually suggestive" in some circumstances to support an inference of retaliation. *Farrell*, 206 F.3d at 285. However, that is not the case here.

The undisputed facts show that Caldwell was terminated because he violated Amazon's Standards of Conduct, specifically failing to cooperate in a company investigation, and no reasonable jury could find his termination was causally related to his complaints. Multiple witnesses and the LPD investigation report confirmed that Caldwell refused to participate in the investigation. (Defs. SOMF, ECF No. 62 at ¶¶ 25, 27–28, 30, 32). Further, Caldwell admits that he refused to participate in LPD's investigation. (*Id.* at ¶¶ 30, 52). Thus, there are simply no facts from which a reasonable jury could find causation.

For all these reasons, Caldwell fails to establish a prima facie case under CEPA.

### 5. Amazon Proffered a Legitimate, Non-Retaliatory Reason for Caldwell's Termination

Finally, even if Caldwell established a prima facie case, his claim nevertheless fails because Defendants have proffered a legitimate non-retaliatory reason for terminating him (i.e., his failure to cooperate with the LPD investigation) which Caldwell has failed to sufficiently rebut.

Under *McDonnell*, once a defendant has set forth a legitimate, non-retaliatory reason for

the adverse action, the burden shifts back to the plaintiff to submit evidence from which a fact finder could reasonably: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Evidence relevant to pretext may include evidence that "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* at 765 (internal quotations and citations omitted).

Here, Plaintiff simply fails to proffer any evidence from which a jury could reject Amazon's proffered reason and find pretext. *See Marrin v. Cap. Health Sys., Inc.*, No. 14-2558, 2017 WL 2369910, at *21 (D.N.J. May 31, 2017) (plaintiff failed to point to evidence that defendants' legitimate business reason for terminating her was pretextual); *Ward v. Ingersoll-Rand Co.*, No. 15-327, 2016 WL 2996769, at *3 (D.N.J. May 24, 2016) (plaintiff failed to proffer evidence sufficient for a reasonable factfinder to find that defendants' reasons for terminating him were "post hoc fabrications or otherwise unworthy of credence").

Accordingly, Defendants' Motions for Summary Judgment, (ECF Nos. 60, 74), are **GRANTED**.[10]

### B. Defendants' Motion to Seal (ECF No. 80)

Defendants move to seal the names of witnesses who provided statements to LPD included

---

[10] Preston and Konopka also argue Caldwell has failed to proffer evidence that their involvement in his termination was sufficient to impose individual liability. (Motion, ECF No. 60 at 18–19). Since the Court grants summary judgment on liability as to Amazon, the Court need not address whether these defendants could be subject to individual liability.

14

in the documents filed in support of and in opposition to the Motions.[11] (Motion to Seal, ECF No. 80-1 at ¶ 2). Defendants argue that the disclosure of the witness names would implicate Amazon's significant interests in "maintaining the confidentiality of witness identities to ensure that [its] employees continue to engage in candid discussions of sensitive issues" without the fear that their names would be publicly disclosed. (*Id.* at ¶ 5). Defendants argue that such public disclosure would "cause a chilling effect on employees reporting real concerns and participating in investigations." (*Id.* at ¶ 7).

Motions to seal are governed by Local Rule 5.3. *See Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 203 (D.N.J. 2021). Local Rule 5.3 requires that motions to seal be made by a single, consolidated motion on behalf of all parties, and include an index providing with particularity (a) the nature of the materials or proceedings at issue, (b) the private or public interests warranting the relief sought, (c) the clearly defined and serious injury that would result without relief, (d) an explanation as to why less restrictive alternatives are unavailable, (e) any prior orders sealing the same materials, and (f) the identity of any objector. When there is an objection, Local Rule 5.3 requires that the index must also state the materials subject to the objection, the basis for the objection, and why materials or information—if previously sealed—should not remain under seal.

Courts must make specific findings pursuant to the Local Rule 5.3(c)(3) factors when ruling on motions to seal or otherwise restricting public access. There is a presumption in favor of public access to judicial records that may be overcome only upon a showing of "good cause" which

---

[11] Defendants' Motion to Seal states that it seeks to seal the name of witnesses involved in the LPD investigation. But the filed briefs and exhibits contain redactions beyond that and include redactions to related to Amazon's internal policies and procedures and details regarding the LPD investigation. (*See e.g.,* ECF No. 60 at 6–7). Defendants, however, do not discuss the propriety of sealing this information.

in essence amounts to "a particularized showing that disclosure will cause a 'clearly defined and serious injury.'" *See Medley*, 550 F. Supp. 3d at 203–04 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Typically, courts will seal documents which incorporate proprietary information, trade secrets, information revealing details concerning a business's structure or contractual arrangements, personal identifiers, and medical information. *Nat'l Distrib. Ctrs., LLC v. BaronHR W., Inc.*, No. 22-554, 2023 WL 2159154, at *2 (D.N.J. Feb. 22, 2023); *Blasucci v. Colvin*, No. 13-5218, 2016 WL 4150844, at *6 (D.N.J. Aug. 3, 2016).

Defendants argue that disclosure of the witness names may result in a "chilling effect on employees reporting real concerns and participating in investigations." (Motion to Seal, ECF No. 80-1 at ¶ 7). However, such a general and conclusory assertion of harm is insufficient. *Nat'l Distrib. Ctrs., LLC*, 2023 WL 2159154 at *3; *Reilly v. Solar*, No. 16-9446, 2021 WL 248872, at *5 (D.N.J. Jan. 26, 2021). Defendants fail to show the existence of a clearly defined injury that would result if their Motion to Seal is not granted. And the failure to do so is sufficient alone to deny a motion to seal. *Pansy*, 23 F.3d at 786 (a moving party must provide specific allegations of harm supported by specific examples).

None of the cases relied upon by Defendants support a finding that a witness's name should be sealed simply because of an employer's general fear that disclosure will create a chilling effect on investigations going forward. (Defs. Proposed Order, ECF No. 80-3 at ¶ 5). In *Sullivan v. IBN Construction Inc.*, sealing the names and identifying information of the company employees was warranted "to protect the witnesses from possible retaliation by their employer." 637 F. Supp. 3d 151, 154 n.1. (D.N.J. 2022). Defendants do not allege that the witnesses in this case have or may in the future experience retaliation due to their involvement in the investigation. Next, *Davis v. Elywn* is distinguishable as the rationale for granting the motion to seal there was to protect the

16

medical information of nonparty individuals. No. 20-5798, 2021 WL 4902333, at *3–4, *6 (E.D. Pa. Oct. 20, 2021). This Motion to Seal does not involve medical information. And while *McCown v. City of Philadelphia* involved allegations of harassment, the information subject to disclosure in this case is not nearly as serious or severe. No. 19-3326, 2021 WL 3737204, at *1 (E.D. Pa. Aug. 24, 2021). In *McCown*, the information sought to be sealed involved an internal affairs memoranda which contained "sensitive information about nonparty complainants, witnesses, and accused employees related to alleged incidents of race and gender discrimination, including allegations of highly offensive comments, treatment, and touching." *Id.* at *4. That is not the case here.

For all these reasons, Defendants' Motion to Seal, (ECF No. 80), is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment, (ECF Nos. 60, 74), are **GRANTED** and Defendants' Motion to Seal, (ECF No. 80), is **DENIED**. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**